WILLIAM ENGELHARDT, as Administrator, etc., of ALBERT ENGEL-HARDT, Deceased, Plaintiff, *v.* THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, Defendant.

*Locomotive engineer — defective vision and drinking habits — when the employer is not liable for injuries caused by the engineer's negligence.*

The fact that the engineer on a locomotive was near-sighted, and that he had been twice intoxicated prior to a certain accident, does not make his employer liable for injuries sustained by a co-employee, resulting from negligence on the part of the engineer, where neither his near-sightedness nor drinking habits in any way contributed to the accident whereby the injuries in question were

sustained, in the absence of proof that the drinking habits of such engineer had rendered him either mentally or physically incompetent to discharge his duties when sober.

MOTION by the plaintiff, William Engelhardt, as administrator, etc., of Albert Engelhardt, deceased, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance, upon a nonsuit directed by the court after a trial before the court and a jury at the Erie Circuit.

*George W. Cothran*, for the motion.

*John G. Milburn*, opposed.

LEWIS, J.:

This action was brought to recover damages for the negligent killing of plaintiff's son while in the employ of the defendant as a fireman on a locomotive engine, through the alleged incompetency of the engineer in charge of the engine.

The case was tried at the Erie Circuit, and at the close of plaintiff's case the court granted a nonsuit upon the ground that the plaintiff had failed to establish a cause of action.

The accident occurred upon the line of the defendant's road at the village of Groveland, N. Y., on the evening of the 10th day of February, 1891. The deceased was a fireman in the employ of the defendant, and he was, at the time he received his injuries, upon one of the defendant's locomotives, which was, at the time, in charge of an engineer by the name of Schrieber.

A freight train of cars had been drawn into Groveland from the east by this engine on the evening of the accident.

The train was manned by a conductor, engineer, fireman and three brakemen. It was run off from the main track upon one of the side tracks for the purpose of allowing the regular express passenger train going easterly the use of the main track. After leaving the main track, the freight engine was uncoupled from the train and was run upon another side or switch track at a place from fifteen to twenty rods distant from the main track. The conductor directed the engineer to remain there with his engine until the passenger train mentioned had passed. Instead of doing as directed, the engineer ran the engine along the switch track towards the main

track, and so near to it that the express train, running at the rate of thirty-eight miles an hour, came into collision with the freight engine; both engines were wrecked and the deceased and one of the brakemen, who were upon the freight engine at the time, were killed. The engineer was not killed.

It is the contention of the plaintiff that the accident was the result of the incompetency of the engineer, Schrieber; that his incompetency consisted of defective vision and habitual intoxication.

The evidence upon which the plaintiff relied to establish the defect in the engineer's eyesight came from the witness, Thomas Lauer. His testimony upon that subject is as follows: " I know that Schrieber was near-sighted; I was on the engine with him; some days he could see a little farther than others, but he couldn't see a great distance; I should judge he couldn't see over 350 feet. very seldom. It was not from intoxication. The man lost the sight of his eyes when he was a lake fireman or lake engineer, before he came to work for the defendant at all. His eyesight was in the same shape when he was running on an engine on the Lake Shore; when I went to work for the defendant, in 1883 or 1884, he was then in the defendant's employ as a yard engineer."

The witness upon his cross-examination testified that the way he knew that Schrieber could not see farther than 350 feet was by giving him signals on the track. There was no evidence that within the distance named, 350 feet, his vision was not perfectly good.

It was not shown that he had any difficulty in seeing well enough to discharge his duties as engineer.

It was necessary for him to see but a very few feet to determine how near he was to the main track at the time of the collision. He was undoubtedly guilty of negligence in running his engine so near the main track. The deceased and one of the brakemen were on the engine when it was run down to the place of the collision, and they do not seem to have discovered the proximity of the engine to the main track. It cannot, with any propriety, be claimed that the accident resulted from any defect in the engineer's eyesight. The plaintiff gave evidence tending to show that Schrieber was in the habit of drinking beer, whiskey and other liquors, and that on two occasions he was intoxicated.

The latter occasion occurred some two or three weeks prior to the

accident. One of the defendant's officials called him to account for it, and threatened to dismiss · him from the company's employ if it was repeated. The witness who testified to seeing him intoxicated on the occasion mentioned had lived near him five or six years, saw him almost daily during a part of the time, and never saw him under the influence of liquor except this once.

There was an absence of any evidence that he drank any liquor on the day of the accident. The evidence failed to show that his drinking habits had rendered him either mentally or physically incompetent to discharge the duties of an engineer when he was sober.

The head brakeman of the train was with Schrieber during the entire day of the accident, and testified that he did not drink that day, and that he was sober on the evening in question. The plaintiff, we think, failed to make a case entitling him to recover. His motion for a new trial should be denied, and judgment directed for the defendant upon the verdict.

DWIGHT, P. J., HAIGHT and BRADLEY, JJ., concurred.

Plaintiff's motion for a new trial denied and judgment ordered for the defendant on the nonsuit.