(59 App. Div. 95.)

### IRWIN v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

STREET RAILROADS—COLLISION—INJURY TO EMPLOYE—MOTORMAN'S COMPETEN-
CY—CONSTRUCTIVE NOTICE—QUESTION FOR JURY.
    Plaintiff's decedent, a street-railway conductor, was killed by collision with another car. At the time decedent was standing between the two cars adjusting the fender on his own car, which was illuminated. The motorman of the other car said the accident was due to his defective eyesight; that he could not see decedent; that his sight was seriously impaired, so that he passed people on the street without recognizing them. He had been employed about a year, and had had two accidents before, and had been suspended, but restored, as no complaint was made. He had made no statement to defendant's officers as to his defective eyesight, and the evidence generally went to show his competency. Held, that whether the accident was due to his incompetency, and whether defendant, by reasonable diligence, could have discovered it, was for the jury.

Appeal from trial term, Kings county.

Action by Theresa Irwin, as administratrix, etc., of Alfred J. Irwin, deceased, against the Brooklyn Heights Railroad Company for the death of plaintiff's intestate. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-BERG, and JENKS, JJ.

P. S. Dudley, for appellant.
Thomas F. Magner, for respondent.

HIRSCHBERG, J. This case is essentially different from Engel-hardt v. Railroad Co., 78 Hun, 588, 29 N. Y. Supp. 425. In that case it was determined that the engineer's nearsightedness in no way contributed to the accident. The accident occurred because he ran his engine too near to the main track. The evidence was to the effect that his vision was perfectly good for a distance of 350 feet, but, as a matter of fact, he ran his engine to within a very few feet of the main track, and remained there until the collision occurred. The court said (page 590, 78 Hun, and page 426, 29 N. Y. Supp.):

"It was necessary for him to see but a very few feet to determine how near he was to the main track at the time of the collision. He was undoubtedly guilty of negligence in running his engine so near the main track. The

deceased and one of the brakemen were on the engine when it was run down to the place of the collision, and they do not seem to have discovered the proximity of the engine to the main track. It cannot, with any propriety, be claimed that the accident resulted from any defect in the engineer's eyesight."

In this case the defendant's motorman, Holmes, ran into a car which was standing at the time on the track in front of the car which he was operating. The plaintiff's decedent was the conductor of that car, and his car should have reached Greenpoint Ferry first. Holmes' car, however, got there first, but he let the car in charge of the plaintiff's decedent start first on the return trip, he immediately following. After crossing Franklin street beyond the circuit breaker, the plaintiff's decedent stopped his car, and went to the rear of it to adjust the fender properly for the return trip, and while he was so doing Holmes ran his car against him, and killed him. Holmes testified on the trial that the accident was due to his defective eyesight. It occurred at night, when it is true he could see the car ahead of him, and which was illuminated, but it was a fair question for the jury whether he could see a man standing by the fender, and to some extent obscured by reason of his position, and whether such an accident would have been likely to occur had Holmes possessed normal vision. Holmes testified that he could not see the plaintiff's decedent; that for a great many years he had suffered from defective eyesight; that he could see nothing with his right eye; that the sight of his left eye was seriously impaired; and that he would pass people in the street who would speak to him, but he could not recognize them. The accident occurred in January, 1895, at which time he had been about a year in the defendant's employ. He testified that he had had two accidents prior to the one in question, both occurring at night,—one six or seven months before, when he ran into a wagon ahead of him because he was unable to see it; and one only two or three months before, when he ran into a milk truck because he did not see it until he hit it. He admitted that on the investigation of that collision by the inspectors or officers of the company he explained to them that the collision occurred because of his inability to see. He appears to have been suspended then, but was afterwards restored to his position because no charges or complaint was made. It appears that he made no distinct statement to the officers of the defendant to the effect that his eyesight was defective, and there is general evidence tending to show his competency to operate a car; but the proof was certainly sufficient to take the case to the jury, and, if credited, to support a conclusion that he was not physically competent, that the accident was caused thereby, and that the defendant could and would have discovered his condition in the exercise of reasonable diligence.

The judgment and order should therefore be affirmed, with costs. All concur.